IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SIGNANT HEALTH HOLDING CORP., SIGNANT HEALTH LLC, SIGNANT HEALTH GLOBAL LLC, and SIGNANT HEALTH GLOBAL SOLUTIONS LIMITED**         **Plaintiff,** <br><br> v. <br><br> **DANIEL DEBONIS, HA63 LLC, and EMA WELLNESS,**         **Defendants.** | **CIVIL ACTION** <br><br> **NO. 24-709** |

HODGE, J.                                                                                                        June 27, 2025

**MEMORANDUM**

Before the Court are (1) Defendant EMA Wellness's ("EMA") Motion to Dismiss ("EMA's Motion") (ECF No. 40) the First Amended Complaint ("FAC") (ECF No. 34) of Plaintiffs Signant Health Holding Corp., Signant Health LLC, Signant Health Global LLC, and Signant Health Global Solutions Limited (collectively "Signant"), (2) Defendants Daniel DeBonis ("DeBonis") and HA63 LLC's[1] ("HA63") Partial Motion to Dismiss Breach of Contract and Trade Secret Claims ("DeBonis' Motion") (ECF No. 41), and (3) Signant's Response in Opposition to both Motions (ECF Nos. 49, 50).

EMA moves to dismiss Signant's Defend Trade Secrets Act (DTSA) claim (Count I) and Pennsylvania Uniform Trade Secrets Act (PUTSA) claim (Count II) (collectively "trade secret claims") against it on the grounds that this Court lacks personal jurisdiction to adjudicate this matter under Federal Rule of Civil Procedure 12(b)(2) and that Signant has failed to state a claim

---

[1] HA63 is a "company owned by DeBonis through which he provided consulting services to Signant." (ECF No. 34 at ¶ 7).

upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40-1 at 12, 20). DeBonis moves to dismiss the trade secret claims (Counts I and II) and the breach of contract claim against him (Count III) on the grounds that Signant has failed to state a claim. (ECF No. 41-2 at 8).

For the reasons that follow, EMA's Motion is denied in its entirety, and DeBonis' Motion is granted as to Count III and denied as to Counts I and II.

I.   Background[2]

Signant is a Pennsylvania-based company that provides technology, and data collection and analysis services to assist its customers with clinical trials. (ECF No. 34 at ¶ 18). In June 2016, DeBonis began working for Signant pursuant to an employment contract (the "Employment Contract"), which prohibited him from — whether during or after employment — (1) retaining or using Signant's confidential information for his own benefit or the benefit of anyone other than Signant; and (2) disclosing, divulging, or revealing Signant's confidential information to anyone outside Signant. (ECF No. 34-1 at 4). While eventually leaving his employment with Signant in March 2023 to work for EMA, a competitor of Signant, DeBonis continued providing services to Signant as a consultant pursuant to a consultancy contract (the "Consultancy Contract"), which prohibited him from — whether during or after consultancy — disclosing, or using or permitting others to use, any information or material that is "confidential and proprietary or which would reasonably be considered confidential or proprietary." (ECF No. 34-2 at 5; ECF No. 34 at ¶ 27). On November 1, 2023, DeBonis and Signant extended the terms of the Consultancy Contract for an additional six months. (ECF No. 34-6 at 2). Signant alleges that, in his capacity as both an employee and a consultant, DeBonis had access to Signant's trade

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

secrets, including confidential information about MindMed, a then-existing customer of Signant. (ECF No. 34 at ¶ 55).

On January 8, 2024, Signant submitted a bid for the contract for Phase III of MindMed's clinical trial. (*Id.* at ¶ 41). About a month later, Signant learned that the MindMed contract was awarded to EMA. (*Id.* at ¶¶ 41-42).

Signant brings this action against EMA, DeBonis, HA63, and Nathan Blubaugh ("Blubaugh") — a former Signant employee who is not part of the instant Motions — seeking injunctive and monetary relief based largely on MindMed awarding the contract for its Phase III clinical trial to EMA instead of Signant. (*Id.* at ¶ 45). As is relevant here, Signant argues that DeBonis and EMA "misappropriated Signant's trade secrets about MindMed," DeBonis by divulging these secrets to EMA and EMA by using the secrets to outbid Signant and secure the MindMed contract. (*Id.* at ¶ 55-58). In a similar vein, Signant asserts that DeBonis breached both the Employment Contract and Consultancy Contract by using its proprietary information to help EMA secure the MindMed contract. (*Id.* at ¶¶ 44, 55).

**II.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A

"formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

### III.   Discussion

#### A.   Personal Jurisdiction

EMA argues that the Court lacks jurisdiction over EMA because (1) EMA is not bound by the forum selection clauses in the Employment Contract, the Consultancy Contract, or Blubaugh's employment contract; and (2) EMA did not have minimum contacts with Pennsylvania sufficient to satisfy due process. (ECF No. 40-1 at 12, 17). However, the Court need not address EMA's jurisdictional argument because EMA has waived any right to challenge personal jurisdiction by virtue of filing a response in opposition to Signant's motion for a temporary restraining order and preliminary injunction (ECF No. 18). "If a defendant litigates the merits of a complaint before contesting personal jurisdiction, that defendant has consented to personal jurisdiction in that forum." *Spring Pharms., LLC v. Retrophin, Inc.*, No. 18-4553, 2019 U.S. Dist. LEXIS 213901, at *29-30 (E.D. Pa. Dec. 11, 2019); *see Richard v. U.S. Airways, Inc.*, 2011 U.S. Dist. LEXIS 7642, at *1 (E.D. Pa. Jan. 26, 2011) ("Personal jurisdiction is a right that may be waived . . . . a party may consent to personal jurisdiction if he or she 'actually litigates the underlying merits . . . .'").

#### B.   Trade Secrets Claims (Counts I and II)

In order to prevail on a claim for misappropriation of trade secrets under both the DTSA and the PUTSA at the motion to dismiss stage, a plaintiff must plausibly plead "(1) the existence of a trade secret, (2) that the trade secret was protectible, and (3) that it was misappropriated by the defendant." *Elmagin Cap., LLC v. Chen*, 2024 U.S. App. LEXIS 13608, at *2 (3d Cir. Mar. 21, 2024); *see Paragon Eng'g Servs., Inc. v. Providence Eng'g Corp.*, 2024 U.S. Dist. LEXIS

221842, at *7 (M.D. Pa. Dec. 9, 2024) (claims under the DTSA and the PUTSA require the same elements). To establish the first element,[3] a plaintiff must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such. *See* 18 U.S.C. §§ 1836(b), 1839(3). A "trade secret" includes:

> all forms and types of financial, business, scientific, technical, economic, or engineering information . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

EMA and DeBonis assert that the Court should dismiss Counts I and II of Signant's FAC because "they do not identify any alleged trade secrets with the required specificity." (ECF No. 40-1 at 20; ECF No. 41-2 at 13). The Court disagrees. "[A] misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021). However, "a plaintiff need not spell out the details of the trade secret to avoid dismissal." *Id.* "Rather, the subject matter of the trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* (citation omitted).

Here, Signant alleges that it owns non-publicly disclosed trade secrets that DeBonis had access to and that relate to, among other things: Signant's unique market strategy, customer data and prospective customer data, price points, company innovations and strategies, and MindMed

---

[3] Because Defendant's Motion appears to only address the first element, the Court does the same.

and Signant's products and services that had been and would be used to support MindMed's clinical trials. (ECF No. 34 at ¶¶ 23, 53, 55). Courts in this Circuit have routinely found that the types of information that DeBonis allegedly disclosed to EMA constitute trade secrets. *See OWAL Inc. v Caregility Corp.*, No. 21-13407, 2022 U.S. Dist. LEXIS 54029, at *7 (D.N.J. Mar. 25, 2022) (finding that "financial information, business plans and strategies [and] marketing plans" contained in pitch decks were sufficient to constitute trade secrets, as this information was linked to "materials [plaintiff] provided to [defendant]); *Storysoft LLC, WebMD LLC*, No. 23-20390, 2024 Dist. LEXIS 143583, at *5 (D.N.J. Aug. 13, 2024) (finding that "valuable proprietary software code, details regarding the development, use and customization of [a proprietary] product, and business and marketing strategy" constituted trade secrets even though they were listed as "relatively broad categories of information" in the complaint); *IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 U.S. Dist. LEXIS 130815, at *6 (D.N.J. Sept. 13, 2012) (finding that a list of customers, "pricing and marketing strategies," "accounting, accounts receivable, and payment records," and "market analyses" constituted trade secrets).

  Signant further alleges (1) that these trade secrets "are of substantial economic value" and "give Signant a competitive edge over competitors such as EMA"; and (2) that they have spent significant resources, "including time and money," in developing their trade secrets and take reasonable steps to maintain their confidentiality. (ECF No. 34 at ¶ 54). Regarding the latter point of confidentiality, "[a]side from technological systems which Signant employs to keep its data safe, Signant requires employees and consultants who have access to its proprietary information to enter into restrictive covenants agreeing not to divulge any of Signant's confidential information," as illustrated by the confidentiality provisions of Debonis' Employment Contract and Consultancy Contract. (ECF No. 32 at 6). It is therefore evident that

Signant made affirmative efforts to maintain secrecy beyond mere routine business practices and that its information was likely unavailable outside of the business. Indeed, the information was closely held, actively protected, disclosed solely under confidentiality agreement, and not readily obtainable by competitors through public channels or independent research.

In sum, the proprietary information at issue qualifies as trade secrets that were protectable as such. Accordingly, the Court finds that Signant has adequately alleged its claims under the DTSA and PUTSA, and denies both EMA and Debonis' Motions as to Counts I and II.

### C. Breach of Contract Claim (Count III)

Signant alleges that DeBonis materially breached the non-solicitation provisions of his Employment Contract and Consultancy Contract by "diverting MindMed's contract away from Signant and to EMA," in turn "facilitating his ability to render continuing services to MindMed in the future in further violation of his agreements." (ECF No. 34 at ¶ 80). Debonis counters that, to the extent Count III relies on a breach of the Employment Contract, the Court must dismiss the claim because the Employment Contract is superseded by the integration clause of the Consultancy Contract. The Court need not address this argument. Because DeBonis' Motion only discusses why Signant fails to state a breach of the Consultancy Contract, it accordingly fails to contemplate the question of whether DeBonis breached the Employment Contract. Thus, finding it unnecessary to determine whether the Employment Contract is independent from or subsumed within the Consultancy Contract, the Court focuses exclusively on the Consultancy Contract.

"To state a claim for breach of contract under Pennsylvania law,[4] a plaintiff is required to plead: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 714 (E.D. Pa. 2024) (citations omitted). DeBonis appears to only dispute the second element, asserting that, "to the extent Signant's breach of contract claim relies on the first paragraph of the nonsolicitation [sic] provision in the Consultancy [Contract],[5] it must be dismissed" because "that clause only restricted DeBonis from working with customers that he interacted with during the consultancy," and "Signant has not alleged . . . that DeBonis

---

[4] The Consultancy Contract states that it "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania governing contracts wholly executed and performed therein." (ECF No. 29-19 at 8). The Court will honor the choice of law of the parties as set forth in the Employment Contract. In any event, the application of Pennsylvania law comports with the requirement that a federal court "exercising federal question jurisdiction over a federal claim and supplemental jurisdiction over related state law claims applies the choice-of-law rules of the state of the forum." *Neopart Transit, LLC v. Management Consulting, Inc.*, No. 16-3103, 2017 WL 714043, at *11 (E.D. Pa. Feb. 23, 2017). *See Rohm and Hass Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir. 1982) (stating that "a federal court whose jurisdiction over a state claim is based on diversity . . . or on pendency to a federal claim . . . must apply the conflicts of law principles of the forum state."). Here, the forum state is Pennsylvania. In line with section 187 of the Restatement (Second) of Conflict of Laws, which provides for enforceability unless: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice;" or, (2) application of the law of the chosen state would be contrary to a fundamental policy of" another state with a greater interest in the issue, "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (quotations omitted). Here, Signant Health Holding Corp. is headquartered in Pennsylvania and HA63 has transacted business with Signant in Pennsylvania. (ECF No. 34 at ¶¶ 2, 7). Thus, the chosen state has a substantial relationship to the parties. *See Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000).

[5] The first paragraph of the non-solicitation provision states that, "[d]uring the term of this Agreement . . . Consultant shall not directly or indirectly . . . contact, call upon, solicit or otherwise accept business from, render services to, market services or products to, divert business from, and/or interfere with Signant Health's relationship or business with any of Signant Health's existing or prospective customers that Consultant interacted with on behalf of Signant Health, was introduced to by virtue of Consultant's performance of the Services, or otherwise learned Confidential Information concerning, during the term of the Agreement." (ECF No. 29-19 at 6-7) (emphasis added).

'interacted' with MindMed on Signant's behalf *while he was consulting for Signant*." (ECF No. 41-2 at 13). Signant responds that the Court's dismissal of "any portion of Signant's breach of contract claims before Signant's opportunity to fully develop its claims through full discovery would be prejudicially premature." (ECF No. 49 at 11).

The Court agrees with DeBonis and finds that, as it pertains to the first paragraph of the Consultancy Contract's non-solicitation provision, Signant has failed to plead sufficient facts to state a plausible breach of contract claim. In its FAC, Signant alleges that, "[w]hile working with Signant, DeBonis was involved with Signant's delivery of services to MindMed." (ECF No. 34 ¶ 43). Because DeBonis worked with Signant as an employee as well as consultant, it is unclear what Signant means by "[w]hile working with", language which is material to the determination of whether DeBonis breached the Consultancy Contract. Signant further avers that "Debonis had specifically been involved in Signant's performance of services to MindMed during phase II of their clinical trial." (*Id.*). However, Signant does not specify whether DeBonis serviced MindMed during Phase II as an employee or as a consultant, and more importantly, it does "not allege that DeBonis was in any way involved in the submission of Signant's bid for MindMed's Phase III clinical trial." (ECF No. 41-2 at 13). Indeed, the crux of Signant's grievance against DeBonis is that he "plotted" with EMA to use Signant's proprietary information to help EMA secure the contract for Phase III of MindMed's clinical trial; thus, DeBonis's involvement during Phase II is inapposite. (ECF No. 34 at ¶¶ 44-45).

Accordingly, the Court grants Debonis' Motion as to Count III.

### IV. Conclusion

For the foregoing reasons, EMA's Motion to Dismiss is denied in its entirety, and DeBonis' Motion to Dismiss is granted as to Count III and denied as to Counts I and II. An appropriate order will follow.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**